**BITUMINOUS ROADWAYS,
INC., Relator,**

v.

**The COMMISSIONER OF REVENUE,
Respondent.**

**No. 81–573.**

Supreme Court of Minnesota.

April 30, 1982.

Rehearing Denied Sept. 24, 1982.

Gordon Rosenmeier and Douglas P. Anderson, Little Falls, Robert C. Hoene, St. Paul, for relator.

Warren Spannaus, Atty. Gen., and Thomas K. Overton, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

TODD, Justice.

This appeal arises from two orders of the Commissioner of Revenue which assessed to the appellant, Bituminous Roadways, Inc. (BRI), a total of $40,646.90 in additional use tax. Both orders were appealed and were heard together in the Minnesota Tax Court. By order of April 7, 1981, the Tax Court affirmed the assessments made by the Commissioner, subject to certain modifications not relevant to this appeal. BRI commenced this appeal by a petition for a writ of certiorari to review the decision of the Tax Court. We affirm.

The facts of this case are not disputed. Appellant BRI is in the asphalt paving business. The company sometimes acts as a contractor and sometimes as a subcontrac-

tor in the construction of roads, driveways, parking lots, tennis courts, pathways and other similar projects. BRI uses what it refers to as a "bituminous mix," or "hot mix," as paving material. The mix is a compound of asphalt cement and a gravel aggregate. While BRI has its own hot mix production capacity, the company sometimes needs more mix than can be produced at the BRI plant. BRI must therefore purchase bituminous mix from others. In the present case, BRI purchased certain quantities of hot mix from Midwest Asphalt, Inc. (Midwest). The mix purchased by BRI was then used by BRI to complete its various paving projects. The issue on appeal is whether the sale of bituminous mix by Midwest to BRI was subject to Minnesota sales and use tax.

Minn.Stat. § 297A.02 (1980) imposes an excise tax of 4% upon the gross receipts from all "sales at retail". Minn.Stat. § 297A.14 (1980) imposes upon retail purchasers a 4% "use tax" to the extent the § 297A.02 sales tax has not been paid. A "retail sale" is defined by Minn.Stat. § 297A.01, subd. 4 as "a sale for any purpose other than resale in the regular course of business."

BRI concedes for the purpose of this appeal that its purchases of hot mix from Midwest were "retail sales" under § 297A.01, subd. 4.[1] BRI's position is that although its purchase of the bituminous mix was a retail sale, the purchase was exempt from taxation under the industrial production exemption found in Minn.Stat. § 297A.25, subd. 1(h) (1980). Section 297A.25, subd. 1(h) exempts from sales tax and use tax

[t]he gross receipts from the sale of and the storage, use, or consumption of all materials * * * used or consumed in * * industrial production of personal property intended to be sold ultimately at retail, whether or not the item so used becomes an ingredient or constituent part of the property produced.

BRI argues that when it purchased hot mix from Midwest, it purchased "personal property intended to be sold at retail," and that the *taxable sale* of the mix occurs when BRI sells the paving material by placing it upon the real estate of its customers.

The Tax Court rejected BRI's exemption argument for three reasons. First, the lower court refused to accept BRI's contention that there can be two successive "retail sales" of personal property, citing *County of Hennepin v. State,* 263 N.W.2d 639 (Minn.1978). Second, the court reasoned that BRI's purchase of bituminous mix was not exempt because the paving material was not "used or consumed in * * * industrial production of personal property." Finally, relying on this court's decision in *Emil Olson, Inc. v. Commissioner of Revenue,* 293 N.W.2d 831 (Minn.1980), the Tax Court concluded that BRI's purchase of the bituminous mix was not exempt under § 297A.25, subd. 1(h) because the paving material was not ultimately sold by BRI "at retail."

■ We conclude the Tax Court's first reason for denying BRI the § 297A.25, subd. 1(h) exemption, i.e., that Minnesota law does not recognize more than one retail sale as personal property moves from manufacturer or processor to the ultimate consumer, was erroneous. The Tax Court relied upon this court's decision in *County of Hennepin v. State,* 263 N.W.2d 639 (Minn. 1978). The taxpayer in *County of Hennepin* was a fabricator of raw steel and a contractor for construction of the Hennepin County Government Center. This court found that the purchase of raw steel by the taxpayer was a "retail sale" as defined in Minn.Stat. § 297A.01, subd. 4. We then went on to hold that because the taxpayer's purchase of the steel was a retail sale transaction, the sales tax exemption found in § 297A.25, subd. 1(h) had no application:

> ment of real property are "retail sales" or "sales at retail" in whatever quantity sold and whether or not for purpose of resale in the form of real property or otherwise.

---

1. § 297A.01, subd. 4 provides, in relevant part:
   Sales of building materials, supplies and equipment to owners, contractors, subcontractors or builders for the * * * improve-

Our conclusion that the sale of the raw steel to PMS was a "retail sale" under Minn.Stat. 297A.01, subd. 4, has two consequences. First, a sales tax was due under Minn.Stat. 297A.02. Second, since the raw steel was placed in PMS's hands by a "retail sale," PMS cannot claim exemption under Minn.Stat. 297A.25, subd. 1(h). That exemption applies only where a taxpayer is purchasing materials "intended to be sold ultimately at retail * * *." The exemption has no application where, as here, the taxpayer acquires the materials by what has been legislatively defined as a retail sale.

263 N.W.2d at 642. Our conclusion in *County of Hennepin* that the § 297A.25, subd. 1(h) exemption "has no application" when a taxpayer acquires property by "retail sale" is not accurate. In fact, the exemption can only apply when the taxpayer makes a retail purchase. The § 297A.25, subd. 1(h) exemption is a sales tax exemption, and of course, a sales tax is imposed only when there is a retail sale. If there is no retail sale and therefore no potential sales or use tax liability, there is no need to consider the application of the § 297A.25, subd. 1(h) exemption. The exemption is conditioned upon a retail sale. Contrary to the conclusion reached by the Tax Court, Minnesota sales and use tax legislation *does* recognize consecutive retail sales as property passes from suppliers of materials to manufacturers to consumers. However, the first retail sale will only be exempt from taxation under § 297A.25, subd. 1(h) if the material purchased at retail is to be used or consumed in the production of other personal property to be sold at retail. The obvious purpose of the exemption is "to avoid 'tax on a tax' situations by postponing imposition of all sales taxes until the final sale of the finished product." *Commissioner of Revenue v. Safco Products Co.,* 266 N.W.2d 875, 877 (Minn.1978). To the extent *County of Hennepin* can be read to preclude consideration of the possible application of § 297A.25, subd. 1(h) once a retail transaction is identified, the decision is hereby overruled.

However the Tax Court did not err by denying BRI the § 297A.25, subd. 1(h) exemption in the present case. To fit within the § 297A.25, subd. 1(h) sales tax exemption, there must be a purchase of material *"used* or *consumed* in * * * industrial production of personal property to be sold ultimately at retail * * *."* It is quite clear in the present case that BRI never "used or consumed" the material purchased from Midwest (bituminous mix) in the industrial production of any other personal property. As the Tax Court observed, "[t]he production, manufacturing or processing of bituminous mix had been completed when appellant [BRI] made its purchases." BRI simply purchased the hot mix from Midwest and then, without "acting upon" the material in any way, used the paving material in its paving projects. Section 297A.25, subd. 1(h) does not by its language exempt from sales and use taxation the retail purchases of personal property which is later sold again at retail. The statute only exempts the purchase of material used or consumed in the production process.

Because the paving material was neither used or consumed by BRI in the industrial production of other personal property, the retail purchase by BRI was not exempt from sales and use tax under Minn.Stat. § 297A.25, subd. 1(h). Whether a retail sale occurs when paving material purchased from Midwest is subsequently placed by BRI upon the real estate of its customers is a question that is not before us.

Affirmed.

SIMONETT, J., took no part in the consideration or decision of this case.