**David & Elizabeth WEIGEL, d/b/a Cottage Cleaners, Relators,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. C9–96–2019.

Supreme Court of Minnesota.

July 10, 1997.

John R. Schulz, Robert L. Richert, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, for Relators.

Hubert H. Humphrey, III, Attorney General, Jeffrey G. Vigil, St. Paul, for Respondent.

Heard, considered and decided by the court en banc.

## OPINION

GARDEBRING, Justice.

In this case we are asked to determine whether the sale of supplies for use in the provision of dry cleaning services is subject to the sales tax imposed under chapter 297A of Minnesota Statutes. We affirm the tax court and hold that such a sale is not exempt from sales taxation.

Relators David and Elizabeth Weigel owned a dry cleaning business called Cottage Cleaners from 1981 to 1995. During that period, they purchased miscellaneous dry cleaning supplies, including buttons, clips, thread, pads and covers, solvent, soap, additives, plastic bags, hangers, chemicals, and tags. They paid sales tax on these purchases. In September 1993, the Weigels filed a claim for a refund totaling $4346 for sales tax paid on these purchases from June 1990 to June 1993. The Department of Revenue rejected the Weigels' refund claim and the Appeals Office of the Department of Revenue affirmed that decision. The tax court also denied the Weigels' claim for a refund and the Weigels appealed to this court.

The general sales tax scheme in Minnesota is governed by chapter 297A of Minnesota Statutes. It is intended to be a unitary scheme that exempts intermediate transactions and imposes a tax on sales when finished products are purchased by the ultimate user. *Black Photo USA, Inc. v. Commissioner of Revenue*, 498 N.W.2d 433, 434 (Minn.1993). Thus, with many statutorily prescribed exceptions, a tax of 6.5 percent is imposed on the gross receipts from "sales at retail." Minn.Stat. § 297A.02, subd. 1 (1996).

As a general rule, taxation is presumed and the burden of proving that a sale is not a sale at retail is upon the person who makes the sale. Minn.Stat. § 297A.09 (1996). Similarly, the burden of proving an exemp-

tion from taxation rests with the party seeking the exemption. *Worthington Dormitory, Inc. v. Commissioner of Revenue*, 292 N.W.2d 276, 279 (Minn.1980) (citing *Camping and Education Foundation v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 373 (1969)).

On appeal to this court, the Weigels claim that they are entitled to a refund on two grounds. First, they assert that, even if the sales at issue were generally within the reach of the sales tax statute, they are specifically exempted under the "industrial production exemption" of section 297A.25, subd. 9. Secondly, they argue that the sale of supplies to Cottage Cleaners is not within the general reach of the statutory sales tax scheme, in that the sale of the dry cleaning supplies does not constitute a "sale at retail" as defined by section 297A.01, subd. 4. We reject both arguments.

■ First, we consider the Weigels' argument that they are exempt from sales taxation under the "industrial production exemption," which exempts materials consumed in the industrial production of personal property intended to be sold ultimately at retail. The "Exemptions" provision of chapter 297A provides that the items enumerated are "specifically exempted from the taxes imposed by sections 297A.01 to 297A.44." Minn.Stat. § 297A.25, subd. 1 (1996). One exemption is for materials consumed in production:

> The gross receipts from the sale of and the storage, use, or consumption of all materials, including chemicals, fuels, petroleum products, lubricants, packaging materials, including returnable containers used in packaging food and beverage products, feeds, seeds, fertilizers, electricity, gas and steam, used or consumed in agricultural or *industrial production of personal property* intended to be sold ultimately at retail, whether or not the item so used becomes an ingredient or constituent part of the property produced are exempt.

Minn.Stat. § 297A.25, subd. 9 (1996) (emphasis added).

The Weigels argue that the purchase of the supplies at issue falls within the exemption because the supplies were purchased for use and consumption in the dry cleaning business, which, they claim, is the "industrial production of personal property." The tax court held that the Weigels' cleaning business was not engaged in the industrial production of personal property; rather, it furnished a service.

The Weigels rely primarily on section 297A.01, subd. 3(i)(i) to support their argument that dry cleaning is the industrial production of personal property. Under that subdivision, the legislature expanded the definition of "sale" to include certain services, including dry cleaning, thus providing for taxation of those services.[1] In addition to expanding the definition of "sale" to include dry cleaning services, the statute also provides: "In applying the provisions of this chapter, the terms 'tangible personal property' and 'sales at retail' include taxable services and the provision of taxable services, *unless specifically provided otherwise.*" Minn.Stat. § 297A.01, subd. 3(i) (1996) (emphasis added). The Weigels argue that the legislature, through these related provisions, expressly included dry cleaning services within the definition of tangible personal property and therefore, the tax court's conclusion that dry cleaning is not the production of personal property was erroneous.

However, the Weigels' argument ignores a provision of the "industrial production exemption" that is clearly applicable to the facts at issue. Specifically, a later clause of section 297A.25, subd. 9 provides:

[industrial production of personal property] shall not include painting, cleaning, repairing or similar processing of property except as part of the original manufacturing process.

Minn.Stat. § 297A.25, subd. 9 (1996). Thus, while cleaning services might be considered "tangible personal property," based only on the language of section 297A.01, subd. 3(i)(i),

---

1. A "sale" and a "purchase" includes, but is not limited to, each of the following transactions: * * * * * * laundry and dry cleaning services including cleaning, pressing, repairing, altering, and storing clothes, linen services and supply, cleaning and blocking hats, and carpet, drapery, upholstery, and industrial cleaning. Minn.Stat. § 297A.01, subd. 3(i)(i) (1996).

the specific exclusion of "cleaning" from the definition of "industrial production of personal property" contained in section 297A.25, subd. 9, defeats any arguable claim to tax exemption. Therefore, we conclude, as did the tax court, that the Weigels' dry cleaning business does not fall within the "industrial production exemption" of section 297A.25, subd 9.

■ Next, we consider the Weigels' claim that the taxation of the sale of supplies to their dry cleaning business would constitute "double taxation" because the "sale at retail," which would be subject to sales tax, actually occurred when the dry cleaning services were purchased and paid for by the Weigels' dry cleaning customers.[2,3]

"Sale at retail" is defined as "a sale for any purpose *other than resale in the regular course of business.*" Minn.Stat. § 297A.01, subd. 4 (1996) (emphasis added). Thus, any sale made for the purpose of resale in the regular course of business is not subject to the retail sales tax imposed by section 297A.02, subd. 1.

The Weigels claim that the cost of the supplies purchased by Cottage Cleaners was incorporated into the price charged to consumers for dry cleaning services. According to them, because the supplies were actually purchased for *resale* to the consumers of dry cleaning services, any imposition of a sales tax on those supplies would amount to double taxation. The Commissioner of Revenue responds by arguing that the sale of supplies to Cottage Cleaners was a "sale at retail" because Cottage Cleaners did not subsequently "resell" the supplies in their original form.

Instead, the Commissioner contends Cottage Cleaners used the supplies to provide the service of dry cleaning to consumers.

To support their argument that the supplies at issue were purchased for resale, the Weigels rely on this court's decision in *Standard Packaging Corp. v. Commissioner of Revenue*, 288 N.W.2d 234 (Minn.1979). In that case, this court considered whether the sale of paintings purchased for use in the manufacture of playing cards, calendars, and other advertising items was exempt under the "industrial production exemption," section 297A.25, subd. 9, or as a sale for resale under section 297A.01, subd. 4. *Id.* at 235–37. This court held that the paintings were purchased for the purpose of resale because they served no purpose or value to the buyer other than to be a part of the process of converting them into decorative art work on playing cards. *Id.* at 238. We stated that to hold otherwise would result in double taxation, which both sections 297A.01, subd. 4, and 297A.25, subd. 9 were intended to avoid. *Id.*

However, in *Standard Packaging,* this court did not specifically identify whether its conclusion was grounded in section 297A.01, subd. 4, the definition of "sale at retail" or in section 297A.25, subd. 9, the "industrial production exemption." The analysis provided in the decision is tied more clearly to the "industrial production exemption" because it is concerned with what value the paintings have to the buyer aside from its use in the production of goods. Consequently, *Standard Packaging* provides little guidance for the issue of whether the Weigels' purchase of dry cleaning supplies is a "sale for resale."[4]

---

**2.** The Commissioner of Revenue argues that the Weigels did not previously raise this claim below and are thus precluded from raising it now. However, as the Weigels' assert, the argument that the sale of supplies to Cottage Cleaners was not a "sale at retail" was adequately raised at trial and in their post-trial reply brief. Although the Weigels did not specifically argue this issue under section 297A.01, subd. 4, they adequately preserved the argument by claiming that taxation of the supplies amounted to double taxation.

**3.** The tax court did not resolve this argument in the decision below and instead held that the legislature is the proper forum to address the issue of double taxation. But given the statutory definition of a "sale at retail" provided by section

297A.01, subd. 4, this court may properly decide as an issue of statutory interpretation whether the sale of dry cleaning supplies to Cottage Cleaners amounts to a "sale at retail," thus making it subject to the sales tax.

**4.** The Weigels further rely on this court's decisions in *Black Photo USA, Inc. v. Commissioner of Revenue*, 498 N.W.2d 433 (Minn.1993); *Commissioner of Revenue v. Safco Products Co.*, 266 N.W.2d 875 (Minn.1978); and *Midwestern Press, Inc. v. Commissioner of Taxation*, 295 Minn. 59, 203 N.W.2d 344 (1972) to support their argument that the supplies at issue were purchased for resale. However none of these cases are relevant to the issue at hand because each was

We reject the Weigels' broad interpretation of "resale" and hold that the supplies purchased by Cottage Cleaners were not purchased for resale. Rather, we conclude that Cottage Cleaners purchased and used the supplies for the sole purpose of providing dry cleaning services.[5] While the cost of those supplies may have been transferred to consumers of dry cleaning services, that does not amount to a resale under section 297A.01, subd. 4. *See* Jerome R. Hellerstein and Walter Hellerstein, *State Taxation II*, § 14.02(1) (1992) (the exclusion of sales for resale does not apply to all items that are purchased and retransferred. If the purchaser is regarded as providing a service to her customers, she may be treated as consuming the article for the purposes of providing the service.).

As we noted above, the sales tax statutes were designed to impose a unitary tax only on sales made by the ultimate user of the finished product. See *Black Photo*, 498 N.W.2d at 434. We hold that because Cottage Cleaners was the ultimate user of the supplies purchased, the sale of those supplies was properly taxed as a "sale at retail" under section 297A.02, subd. 1.

In summary, we conclude that the Weigels are not entitled to a refund for sales tax paid on the purchase of supplies used for the provision of dry cleaning services. We hold that the sale of such supplies is not exempt from taxation under the "industrial production exemption" of section 297A.25, subd. 9. Furthermore, we hold that the sale of those supplies amounts to a "sale at retail" and is thus taxable under the general tax provision of section 297A.02, subd. 1.

Affirmed.

---

decided solely on the basis of whether the purchased items were exempt under the "industrial production exemption." None of them addresses whether the materials at issue were ultimately resold to the consumer.

The Weigels also cite two decisions by the tax court to support their argument that the provision of dry cleaning services amounts to a resale of the supplies purchased. In *Sally Distributors, Inc. v. Commissioner of Taxation*, No. 1824 (Minn. Tax May 22, 1975), the tax court considered whether the sale of merchandise, used by the purchasers solely as prizes to be given away in games at carnivals, fairs, and similar events, constituted a "sale for resale" under section 297A.01, subd. 4, and was thus not subject to sales tax. The tax court held that the sale of merchandise was a "sale for resale," concluding that a statutory provision that defined a sale as the granting of admission to places of amusement should be interpreted to include the transfer of prizes by the carnival operators to the customers. Thus, the court decided that because the transfer of the prizes amounted to a sale, the original purchase of the prize amounted to a "sale for resale."

The Weigels also rely on *Ludwig–Lockhart Co., Inc. v. Commissioner of Taxation*, No.2002 (Minn. Tax Dec. 28, 1976), in which the tax court considered whether the purchase of paper placemats by restaurants and drive-ins amounted to a "sale for resale" as defined by section 297A.01, subd. 4. The tax court held that because such items were not reusable and were paid for by the restaurant customer either directly or indirectly, the purchase of those placemats was a "sale for resale" and was thus not subject to sales tax.

These decisions are, of course, not binding on this court and appear to be inconsistent with the position taken by the tax court in this case. We do not find their reasoning persuasive nor dispositive of the issues presented here.

5. We further note that under the Weigels' broad interpretation of "resale," virtually all purchases made by a service provider would constitute a "sale for resale" and would thus be exempt from taxation.